UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| LAURA STEELE, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 04-2260 |
| LIFE INSURANCE OF NORTH AMERICA, | ) ) ) |
| Defendant. | ) ) |

**OPINION**

On November 19, 2004, Defendant Life Insurance of North America ("LINA") filed a Notice of Removal from the Vermilion County Circuit Court. Plaintiff Laura Steele had filed a Complaint on September 1, 2004, alleging breach of contract for failure to pay life insurance benefits in Count I and vexatious and unreasonable refusal to pay insurance benefits under the Illinois Insurance Code (215 Ill. Comp. Stat. 5/155 ) in Count II. On June 30, 2005, LINA filed a Motion for Partial Summary Judgment (#25). This court granted the motion on September 13, 2005, finding that Count II of Laura Steele's complaint was preempted by the Employee Retirement Income Security Act (ERISA) (29 U.S.C. §1001 *et seq*.). The parties have now filed cross-motions for summary judgment as to Count I. For the reasons that follow, LINA's Motion for Summary Judgment is GRANTED and Laura Steele's Motion for Summary Judgment is DENIED.

FACTS

Laura Steele is the former spouse of William Steele, now deceased. William had been

employed by CSX transportation as a railroad maintenance worker, and at the time of his death was a participant in the CSX Corporation Optional Personal Accidental Insurance Plan ("Plan"). LINA issued a Group Accident Policy to CSX in connection with the Plan. The policy allowed for $500,000 in benefits to Laura in the event of William's accidental death. The Group Policy's insuring agreement provides as follows:

> We agree to insure those Eligible Person [sic] who are within the covered classes listed in the Organization's application (each herein called the Insured) for whom the required premium is paid and an application made. We will insure the dependent(s) of an Insured provided the correct premium is paid and the eligibility requirements are met. We agree to pay benefits for loss from bodily injuries:
> (a) caused by an accident which happens while an insured is covered by this policy; and
> (b) which, directly and from no other causes, result in a covered loss. (See the Description of Coverage.)
> We will not pay benefits if the loss was caused by:
> (a) sickness, disease, or bodily infirmity; or
> (b) any of the Exclusions listed on page 2.

Page 2 of the Group Policy provides, "No benefits will be paid for loss resulting from . . . commission of a felony by an Insured." A document submitted by LINA indicates that the "Plan Administrator (or its delegate) shall have the discretion to make any findings of fact needed in the administration of the plans, and shall have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion they deem to be appropriate in their sole judgment."

On November 23, 2002, William and Laura attended a wedding reception in Georgetown, Illinois where William consumed alcohol. At 10:53 p.m. that night, a Vermilion County Sheriff's Deputy clocked William driving at a rate of 77 miles per hour in a 55 mile per hour zone traveling northbound. The deputy began to pursue William, and William began to accelerate. The deputy then observed William swerving into the southbound lanes at a speed he estimated to be 100 miles per hour. While driving, William hit a curb and tore the oil pan off of his vehicle. William's vehicle

later struck the back of a pick-up truck traveling northbound, and William's vehicle came to rest about 200 feet north of the collision. After arriving at the collision, the deputy who had previously observed William found him trapped behind the steering wheel. William had sustained severe injuries and died shortly after being transported to the hospital. According to the doctor who treated him, William's death resulted from multiple head injuries, abdominal injuries, and fractures of the left humerus and left acetabulum. The death certificate indicated these injuries were caused by the collision. A passenger in the pick-up truck William struck sustained back injuries as a result of the collision.

On the night of the collision, William was driving on a suspended driver's license. William had received citations for driving under the influence (DUI) of alcohol on two prior occasions. Both citations were received in 1999, one in the state of Tennessee and one in the state of Indiana. The deputy's police report indicates he was informed by a nurse at the hospital that William's blood alcohol content at the time of the accident was .255. This is also indicated on William's hospital chart and on a toxicology report.

On January 22, 2003, Laura filed a claim with LINA seeking benefits as a result of William's death. Brian Billeter, an Accident Claims Team Leader employed by LINA, obtained records from Provena Medical Center and the Illinois State Police regarding the accident. LINA also spoke with Illinois State Trooper C.T. Mazur, who prepared an accident reconstruction report. Trooper Mazur informed LINA that William had two prior DUIs and that his driver's license had been suspended at the time of the collision. On September 12, 2003, Billeter, on behalf of LINA, issued a letter denying Laura's claim on the ground that William's death resulted from a felony and was thus excluded from coverage. The letter stated:

> This policy specifically excludes benefit payment for loss resulting from commission of a felony. Mr. Steele was committing a felony at the time of his death, namely driving while intoxicated, while on a suspended license with two prior DUI's. His driving while intoxicated, coupled with driving at a high rate of speed in order to avoid police intervention, resulted in the accident that caused his death.

On November 11, 2003, Laura, through her attorney, appealed the denial of the claim asserting that people accused of committing more than two DUIs in Vermilion County are generally not charged with a felony and that the decision to charge a defendant with a felony DUI is within the discretion of the state's attorney. No new evidence was submitted in support of the appeal, nor did Laura dispute that William had two prior DUIs or that his driver's license was suspended at the time of the collision. On December 11, 2003, LINA issued a letter affirming its denial of Laura's claim, asserting that if William had survived he would have been charged with a third DUI which is a felony under Illinois law.

Laura filed the affidavit of Vermilion County State's Attorney Frank Young with her motion for summary judgment. Mr. Young indicates in the affidavit that it is not his practice to charge every person who commits a third DUI with a felony. Mr. Young further stated that, based upon his review of the facts of William's case, he would have charged William with a misdemeanor rather than a felony.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920

(7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).

This court must first determine the standard of review appropriate with respect to LINA's decision to deny benefits to Laura. As a general rule, "'a denial of benefits will be reviewed de novo unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Ruiz v. Cont'l Cas. Co., 400 F.3d 986, 989 (7th Cir. 2005), quoting Militello v. Cent. States, Southeast & Southwest Areas Pension Fund, 360 F.3d 681, 685 (7th Cir. 2004). However, if the plan "indicates with the requisite if minimum clarity that a discretionary determination is envisaged, then a denial of benefits will be reviewed under an arbitrary and capricious standard." Ruiz, 400 F.3d at 989 (citation omitted).

Documentation submitted by LINA indicates that the "Plan Administrator (or its delegate) shall have the discretion to make any findings of fact needed in the administration of the plans, and shall have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion they deem to be appropriate in their sole judgment." While there are no "magic words" necessary for a grant of discretionary authority, this language sufficiently mirrors the safe harbor provision set forth in the case of Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000) to apply the arbitrary and capricious standard of review to the administrator's decision. Kobs v. United Wis. Ins. Co., 400 F.3d 1036, 1039 (7th Cir. 2005).

Laura argues that this language is contained within a portion of the summary plan description (SPD) with a different typeset and format than other parts of the SPD. However, Laura presents no evidence that this portion of the SPD, although in a different typeset, was not distributed to

employees or was otherwise not actually a part of the SPD. Laura further asserts this court should use a heightened degree of scrutiny in this case, arguing the administrator's partiality is questioned when the insurer determines benefit eligibility and decides whether to pay benefits out of its own funds. In support of this argument, Laura cites Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377 (3rd Cir. 2000). However, the Seventh Circuit has rejected this argument. In the Seventh Circuit, "'we presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict.'" Kobs, 400 F.3d at 1039, quoting Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan, 144 F.3d 1014, 1020 (7th Cir. 1998). Laura has not presented any specific evidence of a conflict of interest in this matter.

Where the plan administrator's decision is entitled to deference, the court analyzes the decision under an arbitrary and capricious standard. Brehmer v. Inland Steel Indus. Pension Plan, 114 F.3d 656, 660 (7th Cir. 1997). Under this standard, the decision to deny benefits is "reviewed only to determine whether it was downright unreasonable." Brehmer, 114 F.3d at 659. Furthermore, this standard is "the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan." Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan, 102 F.3d 1435, 1438 (7th Cir. 1997). "In other words, it is hard to overturn a decision of a plan administrator." James v. General Motors Corp., 230 F.3d 315, 317 (7th Cir. 2000).

As discussed above, Laura's claim for benefits was denied based upon the exclusion for bodily injury or death that results from "the commission of a felony by the insured." Thus, this court must first determine if there is an issue of fact as to whether William's death was the result of driving under the influence of alcohol. The undisputed evidence before this court indicates that

William had consumed alcohol at a wedding reception on the evening of the accident. William was observed going 22 miles per hour over the speed limit by a sheriff's deputy. The deputy then pursued William and believed him to be traveling 100 miles per hour while swerving into oncoming lanes of traffic. William hit a curb while driving which tore off the oil pan on his vehicle. Ultimately, he struck the back of a truck traveling in the same direction he was traveling. Evidence submitted by LINA[1] indicates William's blood alcohol level was .255 at the time of his admission to the hospital to treat his injuries resulting from the accident, a level more than three times the legal limit. See 625 Ill. Comp. Stat. 5/11-501(a)(1).

Laura presents no evidence to indicate that the cause of the accident was anything other than a result of William's drinking. Rather, Laura argues that William's speeding and lack of attention resulted in the accident. However, this does not rebut the inference that William's speed and lack of attention resulted from drinking. In the absence of any evidence that the accident resulted from another factor, such as a mechanical defect in the car, summary judgment is appropriate on this issue. See Sisters of the Third Order of St. Frances v. SwedishAmerican Group Health Benefit Trust, 901 F.2d 1369, 1371 (7th Cir. 1990).

Laura next argues that William's driving under the influence could not be considered a felony under Illinois law and therefore the exclusion for death resulting from commission of a felony should not apply. Under Illinois law at the time of William's death, a person was guilty of the offense of aggravated driving under the influence of alcohol if "a person committed a violation of this Section, or a similar provision of a law of another state or a local ordinance when the cause of

---

[1] Laura argues that the administrator should not have considered this evidence because it consists of hearsay. However, the plan administrator is not bound by the Federal Rules of Evidence when making its decision. See Karr v. National Asbestos Workers Pension Fund, 150 F.3d 812, 814 (7th Cir. 1998).

action is the same as or substantially similar to this Section, for the third or subsequent time." 625 Ill. Comp. Stat. 5/11-501(d)(1)(A). Section 5/11-501(a) states that a "person shall not drive or be in actual physical control of any vehicle within this State while . . . the alcohol concentration in the person's blood or breath is 0.08 or more based on the definition of blood and breath units in Section 11-501.2 [or] under the influence of alcohol . . ." 625 Ill. Comp. Stat. 5/11-501(a)(1) & (2). Hospital records indicate William's blood alcohol content was .255 on the night of the accident, more than three times the legal limit. LINA was informed by the Illinois State Police that William had received two prior convictions for driving under the influence. Thus, pursuant to the plain language of the statute, it was not unreasonable for the administrator to determine William committed the offense of aggravated driving under the influence, a class 4 felony. 625 Ill. Comp. Stat. 5/11-501(d)(2). While Laura argues that aggravated driving under the influence is simply a felony sentencing enhancement for a misdemeanor offense, this argument is untenable as the statute defines aggravated driving under the influence as a felony.

Laura further asserts that the plan administrator's determination that William committed a felony was arbitrary and capricious because she attained the affidavit of the Vermilion County State's Attorney indicating that he would not have charged William with a felony. Laura further argues she should not have been denied benefits because William was never convicted of aggravated driving under the influence in light of his death. However, the Seventh Circuit has rejected this position. In Berg v. Bd. of Tr., Local 705 Int'l Bhd. of Teamsters Health and Welfare Fund, 725 F.2d 68, 70 (7th Cir. 1984), the court noted "Illinois does not define 'felony' with any reference to whether there has been a 'conviction.'" Berg, 725 F.2d at 70. Rather, "[a] 'felony' occurs upon commission of the proscribed acts regardless of whether there later is a successful prosecution."

Berg, 725 F.2d at 70.  Thus, it is immaterial whether the Vermilion County State's Attorney would have charged William with a felony in his discretion or whether William was actually convicted of the DUI which resulted in his death.  The undisputed evidence before this court demonstrates that William committed the offense which is all that is required under Illinois law.

Finally, Laura argues that the felony exclusion should not be applied because it is ambiguous with regard to its application to offenses involving driving under the influence.  In support of this assertion, Laura cites a Sixth Circuit decision where the court found the term "crime" ambiguous because "reading that term in an insurance policy, the insured is more likely to understand it to mean, for example, burglary, armed robbery, or murder than for it to mean drunk driving." American Family Life Assurance Co. v. Bilyeu, 921 F.2d 87, 89 (6th Cir. 1990).  This court finds the Bilyeu decision unpersuasive.  The Seventh Circuit has held the term "illegal activity" in an insurance contract includes drunk driving, noting that it is "a serious crime, causing the deaths of more than 20,000 persons annually."  Sisters of the Third Order of St. Francis, 901 F.2d at 1372. In light of the serious nature of the crime of drunk driving and the often fatal consequences of this illegal activity, this court concludes that the term "felony" is not ambiguous such that an insured would expect that death or injury resulting from felony drunk driving would be covered under the policy.

Accordingly, this court finds that the determination of the plan administrator that Laura was not entitled to benefits as a result of the exclusion for bodily injury or death that results from "the commission of a felony by the insured" was neither arbitrary nor capricious.[2]

---

[2] This court notes that if it were to make this determination under a de novo standard of review rather than an arbitrary and capricious standard, its decision would not have been different.

IT IS THEREFORE ORDERED:

(1) Plaintiff's Motion for Summary Judgment (#35) is DENIED.

(2) Defendant's Motion for Summary Judgment (#34) is GRANTED.

(3) This case is terminated.

ENTERED this 9th day of January, 2006

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE